UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES,

-vs-

JAMES DOUCHETTE,
                       Defendant.

_____

DECISION and ORDER

10-CR-6058 CJS-2

## INTRODUCTION

Now before the Court is the third motion for "compassionate release" (ECF No. 560) filed by James Douchette ("Defendant" or "Douchette"). For the reasons discussed below, the application is denied.

## BACKGROUND

The reading is presumed to be familiar with the facts of this case. Briefly, on March 11, 2010, a Federal Grand Jury returned an 11-count indictment against Douchette and ten co-defendants. Douchette pleaded guilty, pursuant to a written plea agreement, to Count 1 (violation of 21 U.S.C. § 846) and Count 6 (violation of 18 U.S.C. § 924(c)(1)). At sentencing, the Court granted the Government's 5K1.1 motion for a 5-level downward departure for substantial assistance, which resulted in a sentencing range under the advisory sentencing guidelines of 210-262 months. Otherwise, Douchette's agreed-upon aggregate sentencing range would have been 382-447 months, based on an offense level of 37[1] and a criminal history category VI.[2] The Court sentenced Douchette, then age 33, principally to a 216-month (18 years) aggregate term of imprisonment.

---

[1] Douchette's base offense level was 34, but he received a 3-level increase for being a manager or supervisor of criminal activity involving five or more participants.
[2] PSR at p. 22. Douchette had a criminal score of 7, but two points were added since he committed the instant offense while on probation. Additionally, pursuant to § 4B1.1, Douchette was a Career Offender, therefore his criminal history category became VI.

1

Douchette subsequently filed a motion to vacate pursuant to 28 U.S.C. § 2255, which the Court denied, *see*, ECF No. 445.

On April 2, 2021, Douchette filed his first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). On June 28, 2021, the Court issued an Order (ECF No. 536) denying the application, stating in pertinent part:

> Douchette ("Def.") pleaded guilty to violating 21 U.S.C. § 846 and 18 U.S.C. § 924(c), and on July 23, 2012, the Court sentenced him to an aggregate term of imprisonment of 216 months (18 years). Def's involvement in those offense included the purchase and interstate transportation of multikilogram quantities of cocaine to New York, the manufacturing of cocaine base, the breakdown and packaging of smaller quantities of cocaine and cocaine base for resale, direct distribution of cocaine and cocaine base to others, and facilitating third party purchases of cocaine and cocaine base to others. He also possessed and discharged a firearm in furtherance of drug trafficking. He was given an enhancement for being a manager in the conspiracy and he is a Career Offender.[3] Def. is 42 yrs of age and confined at Beaumont Low FCI, with a scheduled release date of 1/16/2026, meaning that he has approx.. 4.5 years remaining on his sentence. BOP classifies Def. as "Medical Care Level 1," meaning he is less than 70 and generally in good health. Beaumont Low presently reports having zero inmates testing positive for Covid-19, with 1 inmate Covid death during the entire pandemic. [As of June 25, 2021]. Def. tested positive for Covid-19 but has recovered, and refused a vaccination. He seeks compassionate release primarily based on the risk to him of Covid-19. Even assuming he exhausted his admin. remedies, Def. has not shown extraordinary and compelling reasons to reduce his sentence. See United States v. Brooker, 976 F.3d 228, 236-37 (2d Cir. 2020) (finding the district court is not constrained by Guideline 1B1.13, Application Note 1(D)). Additionally, a sentence reduction in his case would not comport with the Section 3553(a) factors, especially 3553(a)(1), (2) & (6).

ECF No. 536.

Less than a month later, on July 22, 2021, Douchette filed his second motion for

---

[3] Douchette's prior convictions in New York include Robbery in the Third Degree and Attempted Criminal Sale of a Controlled Substance in the Third Degree. PSR at p. 7. The Court notes that the robbery conviction involved Douchette grabbing a pizza deliveryman by the throat and forcibly taking his money. PSR at p. 20.

compassionate release, ECF No. 548,[4] claiming that he was in danger in prison, due both to having cooperated with the Government and to Covid-19. Douchette also maintained that prison had rehabilitated him and that he was anxious to leave prison and begin a law-abiding life. On October 19, 2021, the Court denied the application, stating in pertinent part:

> Having considered the submissions, the Court notes that Defendant has not offered anything new in his renewed motion, other than his claim that he was recently assaulted by other inmates in retaliation for having cooperated with the Government. This assertion should be addressed by officials at Beaumont Low, [and] does not amount to an "extraordinary and compelling" reason to reduce Defendant's sentence. Additionally, as the Court previously found, the § 3553(a) factors do not support a sentence reduction in this action. Consequently, Defendant's application (ECF No. 548) is denied.

ECF No. 552.

On February 21, 2023, Douchette filed the subject motion for compassionate release, ECF No. 560, his third, seeking a reduction of his sentence to "time served." In it, he cites a number of factors that he claims constitute "extraordinary and compelling circumstances" warranting a sentence reduction, including several of the same factors raised in his prior applications for the same relief, such as his alleged rehabilitation; the danger posed to him while in prison due to him having cooperated against his co-defendants;[5] the fact that he has various medical conditions, such as obesity and high blood pressure; the more-restrictive conditions of confinement within the Federal Bureau of Prisons resulting from the Covid-19 Pandemic; and the fact that he has already served the majority of his prison sentence.

Additionally, Douchette now also cites other factors as "extraordinary and compelling circumstances" warranting a reduction of his sentence, including that his elderly parents are

---

[4] Defendant has also sent letters to the Court in support of his renewed application, ECF Nos. 537, 550.

[5] Douchette's application baldly asserts that "the BOP has not protected [him] against retaliation," but it later concedes that in direct response to an alleged threat against him the BOP transferred him to a new facility, where he now resides. ECF No. 560 at pp. 2, 7.

in poor health and his teenage sons need him as a positive role model.

Primarily, though, Douchette contends that a sentence reduction is warranted due to "a change in policy regarding sentencing in drug cases." Specifically, Douchette maintains that if he was re-sentenced today, he would potentially face a lower sentence than what he received through application of the Fair Sentencing Act's reduced 18:1 crack-to-powder cocaine ratio.[6] That is so, according to Douchette, since, even though the 18:1 ratio still applies today,[7] the U.S. Attorney General, in a memo dated December 16, 2022, entitled "Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases," ordered his agency's prosecutors to instead advocate for sentences based on a 1:1 crack-to-powder cocaine ratio in drug cases involving mandatory minimum sentences. According to Douchette,

> [t]his memo makes it very clear that if Defendant were to be prosecuted today for the same crime, given that he is an African-American male charged under Title 21 for a drug offense involving crack cocaine, the Justice Department would advocate for a lower sentence consistent with the [Attorney General's] memorandum. This factor is a clear finding of an extraordinary and compelling reason for the purposes of 18 U.S.C. § 3582.

ECF No. 560 at p. 5.

The Government opposes Douchette's motion in all respects, arguing that he has failed to demonstrate extraordinary and compelling circumstances, and that the Section 3553(a) factors weigh against him. The Government particularly maintains that Douchette's

---

[6] *See, e.g., Terry v. United States*, 593 U.S. 486, 491, 141 S. Ct. 1858, 1861–62, 210 L. Ed. 2d 108 (2021) ("In the Fair Sentencing Act of 2010, 124 Stat. 2372, note following 21 U.S.C. 801, Congress . . . reduced the 100-to-1 ratio to about 18 to 1. It did so by increasing the crack quantity thresholds from 5 grams to 28 for the 5-year mandatory minimum and from 50 grams to 280 for the 10-year mandatory minimum. § 2(a), 124 Stat. 2372. These changes did not apply to those who had been sentenced before 2010. The Sentencing Commission then altered the drug quantity table used to calculate Guidelines ranges. USSG § 2D1.1(c). The Commission decreased the recommended sentence for crack offenders to track the statutory change Congress made.").

[7] *See, e.g., United States v. Clark*, No. 3:12-CR-104 (SRU), 2021 WL 201253, at *6 (D. Conn. Jan. 20, 2021) ("Although some changes have been made to the statutory scheme (the crack-to-powder ratio is now 18:1 as opposed to 100:1 and the amount of crack cocaine required to trigger mandatory minimums has been increased) . . . Section 841 and the sentencing guidelines [still] both distinguish between powder and crack cocaine, imposing higher mandatory minimums and sentencing ranges for offenses involving crack than those involving powder cocaine.") (citation omitted).

attempted reliance on the Attorney General's memo is mistaken, since the memo itself expressly states that it cannot be used for such a purpose:

> The defendant argues that the Policy Memorandum issued by the Attorney General on December 16, 2022, is a 'clear finding of an extraordinary and compelling reason for the purposes of 18 U.S.C. § 3582."  To the contrary,
>
>> [t]he policies contained in [the] memorandum . . . are intended solely for the guidance of attorneys for the government.  They are not intended to create as substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States.
>
> See, Memorandum from the Attorney General to all Federal Prosecutors[, "Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases,"] (Dec. 16, 2022)[8]

ECF No. 563 at p. 4.  Indeed, the Government insists that Douchette's "original sentence" was "justly imposed" and should not be reduced.

The Court has considered the parties' submissions and, for the reasons set forth below, denies Douchette's application.

## DISCUSSION

The Court notes, preliminarily, that the legal principles applicable to motions for compassionate release are clear:

> As part of the First Step Act of 2018, Congress authorized courts to consider an inmate's motion for a discretionary sentence modification for "extraordinary and compelling reasons," often colloquially called a motion for compassionate release. See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (amending 18 U.S.C. § 3582(c)(1)(A)).

U.S. v. Saladino, 7 F.4th 120, 121 (2d Cir. 2021).

> [T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might

---

[8] https://www.justice.gov/media/1265321/dl?inline

5

> bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of [U.S. Sentencing] Guideline § 1B1.13, limits the district court's discretion.

*United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020) ("The only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation alone shall not be considered an extraordinary and compelling reason."). Nevertheless, "[e]ven if 'extraordinary and compelling' circumstances exist, a district court may not reduce a defendant's sentence before considering 'the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Cummings*, No. 20-3156-CR, 2021 WL 4142844, at *1 (2d Cir. Sept. 13, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Applying these principles in the instant case, the Court notes, preliminarily, that since Douchette is proceeding *pro se*, the Court is required to construe his submissions liberally to raise the strongest arguments that they suggest.  However, even liberally construing Douchette's papers and carefully considering all his arguments, the Court finds that the factors he has cited do not, either singly or in combination, amount to extraordinary and compelling circumstances to reduce his sentence, and that in any event, a reduction of his sentence is not warranted after consideration of the Section 3553(a) factors.

As mentioned earlier, the centerpiece of Douchette's most-recent motion is his contention that the Attorney General's Memo to federal prosecutors amounts to an extraordinary and compelling circumstance to reduce his sentence.  However, the Court disagrees, for several reasons.

First, the express terms of the memo indicate that Douchette cannot rely on the memo to argue for a reduction of his sentence.  In that regard, another federal district court recently summarized the subject memo by stating, in pertinent part:

6

>In December 2022, Attorney General Merrick Garland issued a memorandum to all federal prosecutors regarding sentencing disparities in cases involving distribution of cocaine base (also known as "crack cocaine") and powder cocaine. Attorney General Merrick Garland, Memorandum for All Federal Prosecutors (Dec. 16, 2022) ("DOJ Memorandum"). The DOJ Memorandum indicates that "[t]he Justice Department supports elimination of the crack-to-powder sentencing disparity and has testified before Congress in support of the EQUAL Act, S. 79, which would remove that disparity." DOJ Memorandum at 4. Further, pursuant to the DOJ Memorandum, when prosecutors are handling crack cocaine cases, they are encouraged to:
>
>>advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine. Where a court concludes that the crack cocaine guidelines apply, prosecutors should generally support a variance to the guidelines range that would apply to the comparable quantity of powder cocaine.
>
>*Id*. at 5.
>
>The DOJ Memorandum makes clear, however, that the policies contained therein are "internal office procedures" that are "intended solely for the guidance of attorneys for the government[,]" and they are "not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States." *Id*. at 5 n.4. Thus, the DOJ Memorandum has no binding effect on the judiciary.

*U.S. v. Foster*, No. 21-CR-30137-DWD, 2024 WL 1483986, at *2 (S.D. Ill. Apr. 5, 2024) (footnote omitted). Indeed, the memo does not reflect a change in the law, but, at most, reflects the current Attorney General's disagreement with the law. Accordingly, the memo does not support Douchette's motion. *See, e.g., Baranco v. United States*, No. 20-CR-0135-6 (JMF), 2023 WL 2612215, at *2 (S.D.N.Y. Mar. 23, 2023) ("[N]othing in the Attorney General's December 16, 2022 memorandum provides the Court with authority to alter Baranco's sentence.").

Moreover, even if the memo otherwise provided some legal support for his application, which it does not, Douchette has not shown that he would receive a different sentence if he were sentenced today, contrary to what he maintains. The relevant portion

7

of the subject memo only concerns the Government's sentencing recommendations, and here the Government opposes Douchette's application and insists that his "justly imposed" original sentence should not be reduced.  Consequently, despite the memo, there is every reason to think that at a re-sentencing the Government would not advocate for a lower sentence than what the Court already imposed, especially considering the substantial break that Douchette already received at sentencing.[9]

Besides, even without regard to either the memo or a recommendation from the Government, the Court already had the power to reject the 18:1 ratio and impose a non-guideline sentence on Douchette. *See, United States v. Diaz-Alicea*, 813 F. App'x 649, 651 (2d Cir. 2020) ("A district court may reject the powder-to-crack-cocaine ratio, deviate from the Guidelines range, and thus necessarily adopt a replacement ratio.") (citation and internal quotation marks omitted); *see also, Spears v. United States*, 555 U.S. 261, 265–66, 129 S. Ct. 840, 843–44 (2009) ("[D]istrict courts are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines.").

However, Douchette and the Government agreed to an aggregate guideline sentence range of 382 to 447 months as part of a written plea agreement in which Douchette admitted to very serious criminal conduct (including shooting at someone who owed him drug money[10]) committed while he was still on probation from a prior conviction.[11]

---

[9] This might especially be true since Douchette played a significant managerial role and discharged a firearm in furtherance of his drug crime. *See, United States v. Fernandez*, No. 13 CR. 20 (PAE), 2023 WL 2584197, at *4 (S.D.N.Y. Mar. 21, 2023) ("In a final argument why his circumstances are ostensibly extraordinary and compelling, Fernandez invokes Attorney General Garland's December 2022 Memorandum[.] . . .  [However,] for a host of reasons, this [memo] does not assist Fernandez's bid for compassionate release. For one, as the Government notes, the AG's Memorandum is prospective only. It explicitly does not apply retroactively to persons like Fernandez who had been sentenced before it took effect.  For another, even if the AG's Memorandum applied retroactively, for two independent reasons, Fernandez could not credibly seek under it relief from a mandatory minimum. As reflected in the PSR and the Court's sentencing determinations, the relevant conduct of his offense included "the use of violence, the direction to another to use violence, [and] the possession of a weapon," conduct which removes a defendant from the scope of the memorandum.  In addition, as these materials reflect, Fernandez played a "significant managerial role in the trafficking of significant quantities of drugs," which also would deny him relief under the Memorandum.").

[10] *See*, PSR at pp. 15, 16 (Discussing details of how, on January 25, 2010, Douchette fird a 9mm pistol at Antoine Brown because he owed Douchette money).

[11] *See*, Sentencing Transcript (ECF No. 364) at pp. 6-7 ("THE COURT: I do want to remind you about the plea agreement into which you entered, Mr. Douchette. And, specifically, I'm reading from paragraph 14:

(As mentioned earlier, that sentencing range changed after the Court granted the Government's § 5K1.1 motion). Douchette agreed, as part of that plea agreement, to the Guidelines calculation therein, and that he would not "move for or recommend a sentence outside the Guidelines." Douchette also waived the right to collaterally attack his sentence. In exchange for those and other promises from Douchette, the Government agreed to, among other things, not file a § 851 information, otherwise Douchette would have face mandatory minimum sentence of 20 years on Count 1 alone.[12] The Court does not believe that, having received the benefits of the plea agreement, Douchette should be able to now use the compassionate release statute to essentially make an "end run" around his collateral attack waiver and argue that the Guideline's crack-to-powder cocaine ratio was unfair at the time of sentencing, which is what he is essentially claiming. *See, e.g., United States v. Carbajal*, No. 19-CR-398 (FB), 2024 WL 1259428, at *2 (E.D.N.Y. Mar. 25, 2024) ("The Second Circuit has not yet decided whether a defendant can challenge the validity of claims that were validly waived in a plea agreement through a compassionate release motion, although several district courts in the Circuit have concluded that defendants may generally not use compassionate release to resuscitate waived challenges.") (collecting cases; internal citation omitted).

All these points factor into the Court's finding that the Attorney General's memo does not constitute an extraordinary and compelling circumstance to reduce Douchette's sentence. *See, e.g., United States v. Ranieri*, 468 F. Supp. 3d 566, 568 (W.D.N.Y. 2020) ("The Plea Agreement recited significant and often violent criminal conduct[, and also

---

The government and the defendant agree to the Sentencing Guidelines' calculation set forth in this agreement. And neither party will advocate or recommend for the application of any other Guideline or move for any Guideline departure or move for – or move for or recommend a sentence outside of the Guidelines except as specifically set forth in this agreement. . . . I want [your family] to understand that in the plea agreement, essentially what you were saying is with one exception, that exception being substantial assistance, the cooperation, that you weren't going to ask me to sentence you to anything less than -- well, the term was 382 to 447 months combined. Now, the low end is 32 years, 10 months, the high end [is] about 36 years or so.").
[12] PSR at p. 23.

9

reflected Ranieri's agreement to accept a 360-month sentence. *In light of that background*, the Court must determine if Ranieri has established extraordinary and compelling reasons to modify or reduce that 360-month sentence.") (emphasis added).

Nor does the Court find that the other factors listed by Douchette in his most-recent motion, such as the fact that his elderly parents are ill or that his children need a positive role model, either singly or in combination with all the other factors he has raised,[13] amount to extraordinary and compelling circumstances to reduce his sentence. *See, e.g., White v. U.S.*, 13-CR-255S (1), 2022 WL 4244219 at *4(W.D.N.Y. Sep. 15, 2022) ("Nothing in the record suggests that any of White's relatives require extraordinary care that only he can provide.").

Additionally, the Court continues to find, based upon all the facts and circumstances of this case, including Douchette's extensive criminal history, which reflects his complete disregard, throughout his adult life, for the law, the safety of law enforcement officers, and the rights of others,[14] and his serious relevant conduct connected to this action, that the factors he cites in support of his application are greatly outweighed by the Section 3553(a) factors, especially § 3553(a)(1),(2) & (6).

CONCLUSION

Douchette's motion for a sentence reduction (ECF No. 560) is denied.

SO ORDERED.

Dated: Rochester, New York
       April 16, 2024         ENTER:

                              *Charles J. Siragusa*
                              CHARLES J. SIRAGUSA
                              United States District Judge

---

[13] The Court also does not find that Douchette has demonstrated any exceptional degree of rehabilitation while in prison.
[14] *See*, PSR (ECF No. 341) at pp. 19-21.

10